Merrimack, }
June 4, 1907. }

PAGE BELTING CO. v. PRINCE & a.

Where dividends upon corporate stock are claimed by the person to whom a certificate has been issued in the capacity of trustee and also by parties who allege that the shares were pledged to them and deposited with the holder of record as their agent, and neither claim appears to be frivolous or unreasonable, the corporation may maintain a bill of interpleader against both claimants to determine the question of title.

A pledgor of corporate stock is not an indispensable party to a bill of interpleader brought by the corporation against the pledgee and the record holder of the shares, for the purpose of determining the question of title to the dividends.

BILL OF INTERPLEADER. Transferred from the April term, 1906, of the superior court by *Peaslee*, J.

*Elwin L. Page*, for the plaintiffs.

*Burnham, Brown, Jones & Warren*, for Prince.

*Streeter & Hollis*, for the Wallaces.

WALKER, J. This is a bill of interpleader, to which the defendant Prince, doing business under the firm name of Prince & Co., filed a demurrer, and the other defendants, representing the partnership of E. G. & E. Wallace, have filed an answer. The question now before the court arises upon the demurrer which the superior court overruled, subject to exception. The plaintiff's allegations are in substance as follows: Prince holds 435 shares of the capital stock of the plaintiff corporation, issued to him as trustee; and by virtue of his certificate he claims the dividends which have been declared upon the stock, and which the plaintiff holds in its possession. He has demanded payment of the same of the plaintiff, which it has refused to comply with. The stock in question was originally sold by the Wallaces to Coffin & Stanton, in 1894. At the same time the Wallaces employed Prince to purchase for them certain bonds of the city of Ironwood in the state of Michigan. Prince, acting as the agent of the Wallaces, on September 22, 1894, entered into a contract with Coffin & Stanton, by which they agreed to deliver to the Wallaces bonds of the city of Ironwood to the amount of $150,000, properly certified, and to deposit with Prince, as agent of the

Wallaces, the stock above referred to as security for the perform-
ance of their agreement. In pursuance of this understanding,
Coffin & Stanton delivered to Prince, as agent of the Wallaces,
certificates of the stock of the plaintiff corporation for 435 shares
as security for their delivery of the Ironwood bonds. The bonds
were never legally issued, and were never delivered or tendered
to the Wallaces, or to their agent, Prince. Coffin & Stanton soon
became insolvent, and a receiver was appointed, who, after the
affairs of the firm were wound up, was discharged on the twenty-
fifth day of August, 1905. It is claimed by the Wallaces that
the pledged stock became their property upon the failure of Coffin
& Stanton to deliver the bonds, and if not, that the right of Coffin
& Stanton to redeem the stock has been lost, said firm having
relinquished all interest in the stock in satisfaction of their breach
of the contract to deliver the bonds. After the failure of Coffin
& Stanton to deliver the bonds, Prince surrendered the certificates
for the stock to the plaintiff and "wrongfully" took a new cer-
tificate for the same in the name of F. H. Prince & Co., trustee.
Although requested, Prince has refused to deliver the certificate
of the stock to the Wallaces. Both Prince and the Wallaces have
demanded the payment of the dividends, but no claim for them
has been made upon the plaintiff by Coffin & Stanton or their
receiver. Many of the foregoing allegations appear in the answer
of the Wallaces, which were incorporated into the bill by an
amendment. The plaintiff filed an affidavit of non-collusion.

The general principles of justice and equity in accordance with
which bills of interpleader are sustained are not doubtful. In this
state they have been clearly stated in *Farley* v. *Blood*, 30 N. H.
354, where it is said (*pp.* 360, 361): "When the party would
maintain a bill of the character of this one, he must allege and
show that he is ignorant of the rights of the different claimants;
or at least that there is doubt as to which of them is entitled to
the fund or other matter which is the subject-matter of the
proceeding. It can be maintained only when the same debt or
duty or other thing is claimed by two or more parties, by different
and separate interests, and in which the claimant [plaintiff] has
no interest beyond that of a mere trustee or stakeholder, and
where, from his own showing, he cannot determine the right
between the conflicting claimants without hazard to himself.
. . . The danger of injury to the complainant, arising out of
the opposing claims and doubtful rights of the several defendants
as between themselves, is the general ground of jurisdiction in the
case of a simple bill of interpleader. It must appear from the
complainant's own showing, that he cannot pay the debt or render
the duty or other thing to either of the parties claiming the same,

without some risk of being subsequently liable for the same debt or duty to the other." This general statement of the law of interpleader is recognized as sound by the authorities (4 Pom. Eq. Jur., ss. 1320, *et seq.*; Macl. Interp. 10; *Salisbury Mills* v. *Townsend*, 109 Mass. 115, 121; *Crane* v. *McDonald*, 118 N. Y. 648, 655), and is not in fact questioned by the parties to this proceeding. It seems to be conceded that if the facts are sufficient in law to justify the plaintiff in entertaining a reasonable doubt as to the validity of the respective claims to the dividends, it is entitled to call upon the claimants to determine the question by interpleading.

The substantial question, therefore, for decision at this time is, whether the facts admitted by Prince by the demurrer, and claimed by the Wallaces in their answer, to be true, have a reasonable tendency to show that the respective claims of the defendants to the dividends held by the plaintiff make it hazardous for the plaintiff, in the due performance of its duty, to pay the money to either. Prince insists that as the stock stands in his name as trustee upon the books of the company, the Wallaces can make no valid or reasonable claim to it or to the dividends as against the plaintiff. As a general proposition, it may be true that the registered holder of stock is entitled to the dividends. In the absence of other facts, he has a *prima facie* right to them, but it is a right that may be defeated. 2 Cook Corp., s 538. In the case of the pledge of stock, it seems to be well settled that the pledgee is entitled to the dividends as against the corporation, although the transfer is not recorded on the corporate books, provided it has notice of the pledge. 2 Cook Corp., s. 468. As dividends paid to the pledgor by the corporation in ignorance of the pledge belong to the pledgee, who may recover them of the pledgor (*Meredith Bank* v. *Marshall*, 68 N. H. 417), there is no valid reason why he may not recover them of the corporation holding them with notice of the pledge, whether the transfer has been actually recorded or not.

Upon this view of the law the question arises, whether it might be found from the facts alleged that the Wallaces are the pledgees of the stock, which Prince holds as their agent. If that is their relation to the stock, it would follow that after notice of their claim the plaintiff would be liable to them for the dividends. Whether Prince is their agent in this respect, so far as appears from the case, is a question of fact; and as it is several times alleged that he is their agent to hold the stock for them, the demurrer admits that such is the fact. Hence it follows that the claim of the Wallaces is not frivolous or unreasonable. As their simple agent, Prince could not insist upon the payment of the div-

idends to him after his power as agent was substantially revoked by the Wallaces' demand upon him for the stock and upon the plaintiff for the dividends.

But it is urged that it is alleged that Prince's certificate shows that he holds the stock as trustee, and that he is something more than a mere agent. There is no allegation in the bill explaining what is meant by the term "trustee," as used in the certificate. Upon investigation it might be found to have no broader significsation than the term agent,—a position the Wallaces may assume,—or it might appear that it was used for the protection of some *cestui que trust*, in accordance with Prince's contention. The fact of its significance is, to say the least, doubtful, and equity does not require the plaintiff to decide the question at its peril. Moreover, it is alleged that Prince "wrongfully" surrendered the original certificates pledged with him as the agent of the Wallaces and took out a new certificate in his name as trustee. It does not appear in whose name the stock stood when it was pledged. It may have been indorsed in blank by the pledgors and held under that authorization by Prince until he took out the new certificate in his name as trustee. But however that may be, for the purposes of this discussion it must be assumed that the stock was properly pledged to the Wallaces and held by Prince as their agent. Under these circumstances, he could not change the capacity in which he held it as a simple agent to that of a trustee for some stranger, without the consent or acquiescence of the Wallaces, his principals; and his attempt to do so by taking out a new certificate indicating such a change, without their concurrence, would be a violation of his duty as their agent and, as stated in the bill, wrongful. Whether his act in this respect was wrongful may be a question of fact depending upon the actual authority given him by the Wallaces. If they authorized him to do it, his act was not wrongful as against them; otherwise it probably would be.

Since the defendants respectively made two distinct and inconsistent claims to the dividends, neither of which appears to be frivolous, manifest justice and equity require that they should litigate the matter between them for the protection of the plaintiff, who is merely an indifferent stakeholder.

It is further objected to the maintenance of this proceeding, that Coffin & Stanton are indispensable parties, since they are pledgors of the stock and may have a right to redeem it. But if they pledged it to the Wallaces, and it should turn out, as alleged, that Prince was merely an agent of the Wallaces, and the plaintiff should be ordered to pay them the dividends, it is not perceived why the pledgors' rights, if any, to an accounting for the dividends so paid would be affected by the practical termination of the con-

tract of agency-existing between the Wallaces and Prince. In that contract, so far as the bill alleges the situation, the pledgors have no interest which would be prejudiced, if the contention of the Wallaces should be sustained. And if, on the other hand, it should be held that the dividends should be paid to Prince as trustee, the pledgors' rights in the final disposition of the money and stock would not be affected. That is a question in which the plaintiff is not interested and which does not occasion it any inconvenience or embarrassment. It merely seeks protection in the payment of the dividends. Whether the rightful payee is the absolute owner of the money, whether his title to it is legal, or equitable, or both, with reference to third parties, or whether he is bound to ultimately account for the dividends and stock to some undisclosed *cestui que trust*, are questions whose solution is not necessary for the protection of the plaintiff, and consequently it is unnecessary to speculate upon them in the present aspect of the case. The demurrer was properly overruled, and the order must be,

*Exception overruled.*

CHASE, J., did not sit: the others concurred.